UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SONYA NAPIER and JOHN NAPIER,

       Plaintiffs,

v                                          Case No. 1:03-cv-335

OSMOSE, INC.,                          Hon. Wendell A. Miles
ARCH WOOD PROTECTION, INC., and
CHEMICAL SPECIALTIES, INC.,

       Defendants.
_____/


OPINION AND ORDER ON PENDING MOTIONS

       This diversity product liability action is currently before the court on the following

motions: (1) a motion by defendants for dismissal or, in the alternative, for summary judgment

(docket no. 112), and (2) a motion by plaintiffs for time to conduct discovery to respond to the

defendants' motion (docket no. 116).

       For the reasons to follow, the court grants the defendants' motion, denies plaintiffs'

motion, and dismisses this action.


**I**

       On June 30, 2001, plaintiff Sonya Napier got a splinter in her foot.  The splinter

apparently came from wood used in the construction of a deck attached to the home which Sonya

Napier shared with her husband, co-plaintiff John Napier.  According to the allegations of

plaintiffs' third amended complaint, the wood used in constructing the deck was treated with a

pesticide containing inorganic arsenic.  The presence of arsenic in the treated wood, plaintiffs'

allege, caused Sonya Napier to suffer "toxic effects" from the splinter in her foot, resulting in

serious permanent injury.  In this action, plaintiffs are seeking recovery of damages for both

personal injury and damage to property.  The claim for property damage is based on the  Napiers'

allegation that the deck continues to pose additional "toxic and carcinogenic risks" such that it

needs to be replaced with "non-toxic" wood.  Third Amended Complaint at 4, ¶s 11-12.

The current defendants are three New York companies which have manufactured and sold

pesticide containing inorganic arsenic.[1]  In their third amended pleading, plaintiffs have alleged

that they are unable to identify which of the defendants caused their claimed damages.  Third

Amended Complaint at 9, ¶ 38.  According to plaintiffs, due to the nature of both inorganic

arsenic wood preservative and the wood treated with it, these products "cannot be traced to a

specific manufacturer[.]"  Third Amended Complaint at 7, ¶ 28.  Notwithstanding their inability

to trace the product used in the construction of their deck to a particular defendant, plaintiffs seek

to hold each of the defendants liable for their damages, based on theories of "alternative liability"

and "concert of action," and on the basis that the defendants are the only manufacturers and

sellers of pesticide products containing inorganic arsenic.

---

[1]Plaintiff Sonya Napier originally filed this action in April, 2003 in Michigan's Eaton County Circuit Court, naming as defendants the American Wood Preservers Institute and Culpeper Wood Preservers, in addition to an "Unknown Chemical Manufacturer."  After the original named defendants filed a Notice of Removal, John Napier joined his wife as a plaintiff in filing an amended complaint which named the current defendants Osmose, Inc., Arch Wood Protection, Inc., and Chemical Specialties, Inc.  Plaintiffs have since amended their pleadings on two additional occasions.  The action has now been pending approximately two and one-half years.

## II

The defendants seek dismissal of plaintiffs' third amended complaint for failure to state a claim under Fed.R.Civ.P. 2(b)(6) or, alternatively, summary judgment under Fed.R.Civ.P. 56.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). In reviewing a motion under the rule, the court must accept pleaded factual allegations as true. Id. "Only well-pleaded facts, however, must be taken as true[,]." and the court "need not accept as true legal conclusions or unwarranted factual inferences." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 405 (6th Cir. 1998). "If an allegation is capable of several inferences, the allegation must be construed in a light most favorable for the plaintiff." Mayer, 988 F.2d at 638. However, the admonishment to construe the plaintiffs' allegations liberally when evaluating a motion under Rule 12(b)(6) does not relieve plaintiffs of their obligation to allege more than bare assertions of legal conclusions. Lewis, 135 F.3d at 405-406. In order to survive a motion under the rule, plaintiffs' complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. Greenberg v. The Life Ins. Co. of Virginia, 177 F.3d 507, 514 (6th Cir. 1999); Lewis, 135 F.3d at 406; Weiner v. Klais and Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997).

"Matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." Weiner, 108 F.3d at 88. If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented and not excluded by the court, then the court is required to treat the motion to dismiss as one for summary judgment under Rule 56.

3

Fed.R.Civ.P. 12(b); <u>Carter v. Stanton</u>, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234 (1972).  Here, although both sides have presented matters outside the pleadings, the court has not considered these outside materials.  It is unnecessary to do so, for plaintiffs' third amended complaint on its face fails to state a viable claim under Michigan law.  In sum, the court has treated the defendants' motion as one under Rule 12(b)(6), not one under Rule 56.

<u>III</u>

"Generally, a well-pleaded claim for personal injury must allege that  (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, (3) the defendant's breach was the proximate cause of the plaintiff's injuries, and (4) damage."  <u>Moll v. Abbott Laboratories</u>, 444 Mich. 1, 506 N.W.2d 816, 824 (1993).  Here, the defendants appear to be challenging whether the allegations of plaintiffs' third amended complaint are sufficient to satisfy the required element of causation.  In their motion and supporting brief, the defendants argue that plaintiffs' claims fail as a matter of law because plaintiffs have alleged that they cannot meet the product identification requirement.

Under Michigan law, "the threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer."  <u>Abel v. Eli Lilly and Company</u>, 418 Mich. 311, 343 N.W.2d 164, 170 (1984).  "The plaintiff must produce evidence of a defect which caused the [injury] and trace that defect into the hands of the defendant."  <u>Id</u>. "This identification requirement is, of course, a facet of the factual causation element of tort law."  <u>Id</u>. at 170 n.8.  The defendants argue that plaintiffs cannot meet this threshold requirement because they have conceded that they "are unable to identify which actor caused the injuries

4

suffered by Sonya Napier and John Napier."  Brief in Support of Defendants' Motion to Dismiss
or, in the Alternative, for Summary Judgment at 5; Third Amended Complaint at 9, ¶ 38.

 In their response to the defendants' motion, plaintiffs do not back away from their
position that they are unable to identify the actor who caused them injury.  However, they argue
that they have nonetheless alleged all of the facts necessary to invoke theories of alternative
liability and concert of action in place of the causation element of their product liability claim.
The sole authority on which plaintiffs rely in support of their position is Michigan's <u>Abel</u> case.

 In <u>Abel</u>, the plaintiffs, who were daughters (and sons-in-law) of women who had taken
the drug DES during their pregnancy, sued the manufacturers of DES, a form of synthetic
estrogen.  The plaintiffs alleged that as a result of prenatal exposure to synthetic estrogen, they
were suffering from cancerous or pre-cancerous lesions of the vagina.  Many of the plaintiffs,
who were unable to identify the manufacturer of the particular synthetic estrogen to which they
were exposed, sought a way "to circumvent the traditional tort element of causation in fact."  343
N.W.2d at 167.  Specifically, in order to "bypass the identification requirement," the plaintiffs
sued all of the manufacturers of synthetic estrogens for pregnancy use in Michigan, alleging that
the manufacturers were jointly and severally liable under theories of alternative liability, concert
of action, and "collective" or "industry-wide" liability."  <u>Id</u>.  The plaintiffs therefore sought to
impose joint and several liability upon all of the defendants for their injuries, even though a
number of the plaintiffs acknowledged that they were unable to identify the specific estrogen
product and the manufacturer that produced or distributed the product.  <u>Id</u>., 343 N.W.2d at 168.
It was undisputed in the case that plaintiffs would not be able to meet the identification
requirement.  <u>Id</u>, 343 N.W.2d at 170.

5

The defendants in <u>Abel</u> argued that plaintiffs' allegations were deficient in two respects. First, they argued, plaintiffs had failed to establish the causation in fact element required in any products liability action.  Second, they further argued, plaintiffs were asserting a collective, industrywide liability cause of action not recognized under Michigan law.  343 N.W.2d at 169-170.  Exploring the theory of alternative liability, the court in <u>Abel</u> described the theory as a "procedural device" which "shifts the burden of proof on the element of causation in fact to the defendants once an innocent plaintiff demonstrates that all defendants acted tortiously, but only one unidentifiable defendant caused plaintiff's injury."  <u>Id</u>. at 170 (citing <u>Summers v. Tice</u>, 33 Cal.2d 80, 199 P.2d 1 (1948)).  The court observed that under this theory, "[i]f the defendants cannot meet this burden and exculpate themselves, joint and several liability will be imposed."  343 N.W.2d at 170.  After exploring the theory as it had developed in Michigan jurisprudence, the court formally approved of alternative liability, but one which was "modified" in order to "accommodate the unique facts" of the case.  <u>Id</u>. at 172.

Specifically, the court in <u>Abel</u> clarified that it was "fashioning and approving a new DES-unique version of alternative liability."  343 N.W.2d at 173.  Under this "DES-unique version of alternative liability," plaintiffs attempting to avail themselves of an "eased burden of proof" on causation were required to meet certain requirements.  These requirements were as follows:

> First, it must be shown that all the defendants have acted tortiously . . . ; second, that the plaintiffs have been harmed by the conduct of one of the defendants (in order to support this second requirement, the plaintiffs must bring before the court all the actors who may have caused the injury in fact); third, that the plaintiffs, through no fault of their own, are unable to identify which actor caused the injury.

<u>Abel</u>, 343 N.W.2d at 173 (footnote and citation omitted).  The court held that plaintiffs' ability to

meet the required conditions "will allow them to avail themselves of DES-modified alternative

liability, thus relieving them of the traditional burden of proof of causation in fact." Id.[2] The

burden would therefore be shifted to each defendant in such cases, requiring each defendant to

prove by a preponderance of the evidence that it neither produced nor marketed the drug ingested

by the female plaintiffs' mothers. Id. at 174. Summarizing its holding on alternative liability, the

court stated as follows:

> alternative liability will be applied in cases in which all defendants have acted
> tortiously, but only one unidentifiable defendant caused plaintiff's injury. If a
> plaintiff brings all the possible defendants into court and establishes the other
> elements of the underlying cause of action, the court should equitably shift an
> onerous burden of causation in fact to the defendants. If the defendants are unable
> to exonerate themselves, joint and several liability results.

Abel, 343 N.W.2d at 174. Applying the requirements which it adopted for establishing

alternative liability, the court in Abel held that some of the plaintiffs – those who had alleged that

they were unable to identify the manufacturer of the product their mothers ingested – had alleged

sufficient facts to withstand summary judgment on the causation issue. Id.

The court in Abel further held that the plaintiffs had also alleged facts sufficient to

withstand summary judgment on another theory, "the traditional theory of concert of action."

343 N.W.2d at 176. According to the court,

> This theory, although not developed to ease plaintiff's traditional burden of proof
> of causation, may have that effect. If plaintiffs can establish that all defendants
> acted tortiously pursuant to a common design, they will all be held liable for the
> entire result.

---

[2]The court in Abel also restricted its holding approving use of this theory to claims of
negligence, without addressing whether the principle should be extended to other theories of
recovery. 343 N.W.2d. at 173 & n. 15.

Id. (footnote omitted).  The court held that in order to withstand a motion for summary judgment based on a failure to state a cause of action based on this theory, a plaintiff "need only allege that the defendants were jointly engaged in a tortious activity as a result of which the plaintiff was harmed."  Id.

At the time Abel was decided, Michigan recognized the principle of joint and several liability.  See Abel, 343 N.W.2d at 175 ("Clearly, the concept of joint and several liability is not foreign to this state").  However, as part of a reform of the state's tort legislation in 1995, Michigan's legislature enacted M.C.L. § 600.2956, which provides in pertinent part as follows:

> Except as provided in section 6304 [M.C.L. §600.6304], in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint.

In addition, according to subsection (1) of M.C.L. § 600.2957, which also applies in this diversity action,

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

Finally, M.C.L. § 600.6304, , referenced in § 600.2956,  provides in pertinent part as follows:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer

8

special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, . . .   regardless of whether the person was or could have been named as a party to the action.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each plaintiff in accordance with the findings under subsection (1), subject to any reduction under subsection (5) or section 2955a or 6303, and shall enter judgment against each party, including a third-party defendant, except that judgment shall not be entered against a person who has been released from liability as provided in section 2925d.

(4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6) [applicable to actions asserting medical malpractice claims], a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1). This subsection and section 2956 do not apply to a defendant that is jointly and severally liable under section 6312.

* * *

(8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.

This 1995 tort reform legislation "eliminated joint and several liability in certain tort actions." Gerling Konzern Allgemeine Versicherungs AG v. Lawson, 472 Mich. 44, 51, 693 N.W.2d 149, 152 (2005); see also Markley v. Oak Health Care Investors of Coldwater, Inc., 255

Mich. App. 245, 660 N.W.2d 344, 347 (2003) ("Under the current statutory scheme, M.C.L. §

600.2956 abolished joint liability in most circumstances"), appeal dismissed, 683 N.W.2d 140

(Mich. 2004).   Now, in such cases, liability among multiple alleged tortfeasors is several only

rather than joint and several.   Id., 472 Mich. at 52, 693 N.W.2d at 153.   Although Michigan's

current system recognizes limited exceptions to this principle, none of these exceptions apply

here.   See M.C.L. § 600.6304(6) (medical malpractice claims); M.C.L. § 600.6312 (listing other

specified instances where liability is joint and several).

        In their motion, the defendants argue that application of a concert of action theory in this

case would contravene the intent of the Michigan legislature to bar joint and several liability.

However, because joint and several liability is a key premise of both alternative liability and

concert of action theories, the question is whether Abel continues to be good law after

Michigan's enactment of tort reform legislation eliminating joint and several liability in tort

actions, with limited statutory exceptions.

        In an unpublished case, Lackie v. Fulks, No. 231479, 2002 WL 1308646 (Mich. App.

June 11, 2002), appeal dismissed, 467 Mich. 936, 655 N.W.2d 562 (Mich. Dec. 30, 2002), a

panel of the Michigan Court of Appeals addressed whether a concert of action theory remained

viable after the statutory changes made in the 1995 tort reform legislation.   The panel's

unpublished per curiam decision concluded that the statutory amendments did not abrogate

plaintiff's concert of action theory.   Instead, the panel held, multiple tortfeasors "acting in concert

and pursuant to a common design" and causing a single harm "can be jointly liable for the

damages caused but will only have to *pay* that part of the total damages award directly

attributable to that specific tortfeasors' assessed percentage of fault."   Id. at *6 (emphasis in

original).  According to the panel,

> Indeed, all joint tortfeasors are *jointly liable* for the injury, but a plaintiff cannot collect the entire amount of the damages from only one of the tortfeasors thus mandating that plaintiff collect, from each of the tortfeasors individually, in accord with their ascribed percentages of fault.

<u>Id</u>. (emphasis in original).

There are, however, insurmountable difficulties presented by applying the <u>Lackie</u> panel's analysis to this case.  The principal difficulty is that the <u>Lackie</u> decision does not actually address the various provisions of the 1995 legislation, but instead relies for its analysis on Michigan's contribution statute, M.C.L. § 600.2925a, which predates the 1995 legislation.  However, contribution does not address the rights between a tortfeasor and a plaintiff; instead, it deals with the rights between joint tortfeasors.   M.C.L. § 600.2956, which was added as part of the 1995 legislation, expressly eliminates joint liability "[e]xcept as provided in" M.C.L. § 600.6304. (Section 600.2956 also clarifies that it does not abolish vicarious liability of an employer, a situation clearly not presented here.)  Subsection (4) of section 600.6304 expressly provides that "[l]iability to which this section applies is several only and not joint."  Although subsection (6)(a) of section 600.6304 does reference joint and several liability, the subsection expressly applies only to medical malpractice actions.  In addition, although M.C.L. § 600.6312 provides for joint and several liability, it does so only in limited circumstances: where the defendant's act or omission is a crime (a) "an element of which is gross negligence, for which the defendant is convicted[,]" or (b) "involving the use of alcohol or a controlled substance for which the

defendant is convicted and that is a violation" of enumerated statutes.[3]  Nothing in Michigan's post-tort reform legislation suggests that the concept of joint liability or any procedural devices specifically adapted to that common law concept survives in ordinary tort actions such as the case at bar.[4]  Indeed, more recently, Michigan's Court of Appeals has suggested that case law decided before tort reform cannot be used to "rewrite" the statutes.  See Salter v. Patton, 261 Mich. App. 559, 682 N.W.2d 537, 541 & n.2 (case law decided before tort reform was "not persuasive" in interpreting post-reform allocation of fault requirements).

Recently, in Gerling, Michigan's highest court held that the state's 1995 tort reform legislation did not eliminate a contribution claim filed by a party who has settled with an injured party by paying more than was warranted by its percentage of fault.  693 N.W.2d at 150-151. However, nothing in Gerling suggests that joint liability survives in actions not specifically provided for in the 1995 legislation.  Although the court indicated that "common liability" may exist "in situations in which multiple tortfeasors are liable for the same injury to a person or

---

[3]Although Lackie involved tort claims of assault and battery based on a beating which the plaintiff alleged occurred both inside and in the parking lot of a bar, 2002 WL 1308646 at *1-2, the case does not indicate whether joint and several liability such as that provided by M.C.L. § 600.6304 was at issue.  This failure represents but one more difficulty preventing this court from following that case here.

[4]Michigan has established procedural devices to deal with the situation where not all persons potentially at fault are named in an action.  As part of its tort reform, the Michigan legislature included a provision allowing nonparties to be added as parties.  See M.C.L. § 600.2957(2) ("Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty").  Although the statutes require the trier of fact to consider the fault of each person "regardless of whether the person is, or could have been, named as a party," M.C.L. § 600.2957(1), Michigan's court rules have required that notice of nonparty fault be given before the trier of fact is required to assess the fault of a nonparty.  M.C.R. 2.112(K).

property[,]" id. at 155, the court carefully clarified that such "common liability" (as provided in

M.C.L. § 600.2925a), exists among defendants who are responsible for an accident which

produces a "single indivisible injury" – such as multi-car accident like that involved in Gerling.

That is not the situation presented here.  As noted in a concurring opinion in the case, "common

liability" cannot be equated with "joint and several liability" as Michigan's statutes currently

read.  See Gerling, 693 N.W.2d at 159 ("The dissent's analysis of 'common liability' would, in

essence, wipe out the contribution statute by equating 'common liability' with 'joint and several

liability.' . . .  While there may be good policy reasons to reconsider how the contribution statute

should operate in light of recent tort reform, these questions are properly resolved by the

Legislature, which may repeal or amend the statute as it sees fit") (Weaver, J., concurring).

      It is clear that the well-known hunting mishap case of Summers v. Tice, on which the

decision in Abel is largely based, clearly depended on the principle of joint liability for its

holding.   In Summers, the trial court "sufficiently found on the issue that defendants were jointly

liable and that thus the negligence of both was the cause of the injury or to that legal effect."  33

Cal.2d at 84.  The court in Summers concluded its decision with the following observation:

> It is urged that plaintiff now has changed the theory of his case in claiming a
> concert of action; that he did not plead or prove such concert. From what has been
> said it is clear that there has been no change in theory. ***The joint liability, as well
> as the lack of knowledge as to which defendant was liable, was pleaded and the
> proof developed the case under either theory.*** We have seen that for the reasons
> of policy discussed herein, the case is based upon the legal proposition that, under
> the circumstances here presented, ***each defendant is liable for the whole damage
> whether they are deemed to be acting in concert or independently.***

Id., 33 Cal.2d at 88 (emphasis supplied).  In addition, as one other court has noted in construing

Idaho's express limitations placed on joint and several liability in legislation similar to

13

Michigan's tort reform legislation,

> [I]t is difficult to assess the status of the alternative liability concept first set forth in *Summers v. Tice*. Apparently, some states have clearly accepted theories of alternative liability, several states have specifically rejected theories of alternative liability, and the majority of states have found its application to be unwarranted in the specific cases where it was offered.  Hence, even if this court were vested with the authority to engage in such prognostication, this court could not, with any certainty, predict that the Idaho Supreme Court would adopt any theory of alternative liability proposed by the plaintiff.

> Moreover, the express legislative limitation placed on joint and several liability in Idaho substantially undermines plaintiff's arguments which ask this court to conclude that Idaho courts would permit plaintiff to pursue his negligence claims based on alternative theories of liability. It is readily acknowledged that the concept of joint and several liability underlies the concept of alternative liability delineated in *Summers*.  . . . [G]iven the recognition that the theory of alternative liability set forth in *Summers v. Tice* involves joint and several liability, and given that the Idaho Supreme Court fully acknowledges that the Idaho legislature abolished joint and several liability when it enacted Idaho Code § 6- 803(3), existing Idaho law precludes the endorsement of alternative liability theories.

Doe v. Cutter Biological, A Division of Miles, Inc., 852 F. Supp.909, 917-918 (D. Idaho 1994),

appeal dismissed as moot, 89 F.3d 844 (9th Cir. 1996) (Table).

Finally, what is clear is that Michigan law now expressly requires the fact finder to make specific findings indicating "the percentage of total fault of all persons that contributed to the . . . injury[.]" M.C.L. § 600.6304(1).  This statutory requirement is neither unclear nor inconsistent. Smiley v. Corrigan, 248 Mich. App. 51, 638 N.W.2d 151, 153 (2001).  The law further requires that in determining each person's fault, "the trier of fact shall consider both the nature of the conduct of each person at fault ***and the extent of the causal relation between the conduct and the damages claimed***." M.C.L. § 600.6304(2) (emphasis supplied).  In addition, M.C.L. § 600.2957 makes it clear that the trier of fact is to allocate "the liability of each person . . . in

14

direct proportion to the person's percentage of fault." Moreover, "fault" is defined with reference to conduct "that is a ***proximate cause*** of the damage sustained by a party." M.C.L. § 600.6304(8) (emphasis supplied). However, given plaintiffs' allegation that they "are unable to identify which actor caused the injuries[,]" Third Amended Complaint at 9, ¶ 38, it is apparent that plaintiffs' own pleadings in this case indicate that the fact finder will have no basis on which to allocate liability to any of the defendants. Because the applicable substantive law and plaintiffs' own pleadings indicate that they will not be able to establish the required element of causation as to each defendant, these defendants are entitled to summary judgment as a matter of law.

Based on the foregoing, the court agrees with the defendants that it would contradict the Michigan legislature's intent to allow a concert of action theory to impose joint and several liability in this case.[5] Moreover, because the concept of joint and several liability likewise underlies the concept of alternative liability also recognized in <u>Abel</u>, the court also concludes that allowing an alternative liability theory to impose liability without proof of causation in this case would contradict the Michigan legislature's intent to bar joint and several liability except where that body clearly expressed an intent to the contrary. In sum, the court concludes that because Michigan has statutorily eliminated joint and several liability in actions such as plaintiffs' here,

---

[5]In a footnote contained in their brief in support, the defendants also suggest that the theory of alternative liability adopted in <u>Abel</u> should not be extended to the facts of this case because, unlike the drug at issue in that case, each piece of wood treated with inorganic arsenic is "unique, with divergent alleged toxicities due to a multitude of variables before, during and after the treatment process." Brief in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment at 7 n.5. However, because the court concludes that the holding of <u>Abel</u> is no longer valid in views of changes to Michigan's tort legislation, the court need not address this argument.

the theories of alternative liability and concert of action addressed in <u>Abel</u> do not apply to save plaintiffs' claims seeking damages for personal injury or property damage based on tort or any other legal theory.

## <u>IV</u>

As an "alternative" position in response to the defendants' motion for summary judgment, plaintiffs move for time to conduct discovery. However, because the court has determined to dismiss plaintiffs' action for failure to state a claim, discovery will not save it.

In any event, plaintiffs have conceded that much of the discovery they intend to seek "focuses on [their] theories of alternative liability and concert of action." Verified Motion for Time to Conduct Discovery to Respond to Defendants' Motion for Summary Judgment at 8, ¶ 14. Other discovery which plaintiffs have stated they intend to seek appears to be directed to a "market share" theory of liability, which has never been recognized in Michigan. <u>See</u> <u>Abel</u>, 343 N.W.2d at 176 (declining to evaluate "enterprise" , "industry-wide", or "market share" liability where plaintiffs had not urged adoption of these new theories). Simply put, because the discovery which plaintiff seeks would not enable them to either state a claim or meet their burden to establish fault under the current substantive law, the court denies their motion.

## <u>Conclusion</u>

It is for the Michigan legislature to decide whether to exempt claims such as plaintiffs' from the modification of joint and several liability contained in the state's 1995 tort reform legislation. The legislature has not enacted such an exception, and this federal court will not

create one where it does not exist.  Without a basis of joint liability, plaintiffs' claims against the defendants in this action cannot succeed under the applicable substantive law.  Given plaintiffs' express allegation that they cannot identify which defendant caused their damages, no amount of discovery will save their claims.  The court therefore grants defendants' motion, denies plaintiffs' motion, and orders this action dismissed with prejudice for failure to state a claim.

Ordered this 14th day of November, 2005.

 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge

17